UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BASAT, #472479,

        Plaintiff,        CIVIL NO: 07-13332

        DISTRICT JUDGE DENISE PAGE HOOD
        MAGISTRATE JUDGE STEVEN D. PEPE

vs.

PATRICIA CARUSO, DOUGLAS VASBINDER,
DR. ANTONINI, JOY J. RYAN, CONNIE IVES, PEGGY LEE,
ALFRED JONES, NANCY MARTIN, JAMES ARMSTRONG,
JOHN DOE AND MARY DOE,

        Defendants.
_____/

**ORDER DENYING PLAINTIFF'S
MOTION TO AMEND HIS COMPLAINT (DKT. #30)**

This is a *pro se* prisoner lawsuit under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment and Americans with Disabilities Act ("ADA"). At the time of the incidents which give rise to the present action, Plaintiff was incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, part of the Michigan Department of Corrections. Plaintiff currently is incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff alleges that Defendants failed to treat an ear infection timely and/or properly, resulting in total hearing loss in his left ear as well as partial hearing loss in his right ear.

Plaintiff filed this suit on August 10, 2007, and Defendants Patricia Caruso, Douglas Vasbinder, Joy Ryan, Connie Ives, Peggy Lee, Alfred Jones, Nancy Martin, and James Armstrong ("MDOC Defendants") were served via waiver on September 10, 2007. Plaintiff is

1

also suing Audberto Antonini, M.D., an independent contractor of Correctional Medical Services, Inc. ("CMS"), a private independent contractor of the State of Michigan (Dkt. #20, p. 6). On November 6, 2007, the MDOC Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim and alternative motion for summary judgment under Fed. R. Civ. P. 56(b) based on failure to exhaust administrative remedies (Dkt. #24). On October 11, 2007, the Defendant Antonini also filed a similar motion (Dkt. #20). All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #5). For the reasons indicated in two Report and Recommendations issued on the same date as this order, it is recommended that both of these motions to dismiss be granted albeit for different reasons.

On December 30, 2007, Plaintiff filed a motion to amend his Complaint (Dkt. #30). In his motion, Plaintiff concedes that he failed to exhaust his claims against Defendants Caruso, Vasbinder, Ryan, Ives, Lee, Jones, Martin, and Armstrong, and asks that these parties be removed from his Complaint. Plaintiff also moves to add the Michigan Department of Corrections as a defendant involving the "violations of Plaintiff's rights pursuant to the United States Constitution Am XIV, and the American's (sic) with Disabilities Act" (Dkt. #30, p. 5 of 50). Finally, Plaintiff seeks to amend his Complaint to allege violations against Defendant Antonini in his individual capacity only (Dkt. #30, p. 6 of 50). For the reasons indicated below, it is **ORDERED** that Plaintiff's motion to amend his Complaint is **DENIED.**

I. **BACKGROUND**

Plaintiff alleges that he began having earaches in late January, 2004 (Complaint, pgs. 2,

9).[1]  Health care told him that it might be an ear infection, gave him medication, and told him that it should clear up (*Id.* at pgs. 2, 9).  On February 19, Plaintiff was transferred to the Cotton Correctional Facility ("JCF"), a "certified chronic care facility" (*Id.* at pgs. 2, 9).  Plaintiff kited health care on March 1, complaining of leg pain and dizziness (*Id*. at  pg. 9).  After the first week of March, Plaintiff went to health care and was told that he had an ear infection (*Id.* at pg. 10).

On April 22, Plaintiff went to Foote Hospital for medical tests on his legs, but no tests were done on his ears (*Id.* at pgs. 2, 10).  Plaintiff sent kites to health care on April 29 and May 21, but he did not receive responses.  Plaintiff went to health care on May 25; his ear was flushed with peroxide and he was told that the infection would clear up (*Id*. at pg. 10).  He alleges that this was done on his right ear only because the nurse said that the left ear looked "bad" and he didn't want to "fool with it" (*Id.* at pg. 11).  On June 4, Plaintiff sent a kite to health care; the response by Defendant Ryan indicated that Plaintiff had an appointment on June 16 (*Id.* at pgs. 2, 11).  That appointment was cancelled, and Plaintiff sent more kites on June 26 and July 9 (*Id.* at pgs.  2-3, 11).  Plaintiff filed a Step I grievance on July 29, 2004; this grievance was answered by Defendants Ives and Lee (*Id.* at pgs. 3, 11-12).  The response indicated that Plaintiff had an appointment for September 9.  All of the above events occurred more than three years before Plaintiff filed this suit.

On September 9, 2004, Plaintiff went to health care and was prescribed Augmentin for his ear.  On October 20, Plaintiff kited health care; he was told by Ryan that he had an appointment on October 25 (*Id*. at pgs. 3, 12).  On that day, he waited for four hours before

---

[1] The page numbers refer to Plaintiff's type written Complaint, which begins on page 6 of Dkt. #1.

having to leave without seeing the doctor (*Id.* at pg. 12). Plaintiff filed a kite on October 28; on October 29, Plaintiff was prescribed the antibiotic Levaquin for his ears (*Id.* at pgs. 3, 12). Plaintiff alleges that, in the same appointment, the doctor, Defendant Antonini, told him that he could not get the same care as if he was not a convict; the doctor told him that CMS would not pay for surgeries for both his legs and ears, so he would have to "choose" which he wanted to keep (*Id.* at pgs. 3-4, 13). Plaintiff indicates he chose to keep his legs and lose his hearing (*Id*. at pgs. 4, 13).

In March 2005, Plaintiff was given a hearing test; the technician told him that he had lost some of his hearing in both ears (*Id.* at pgs. 4, 14). On May 16, Plaintiff filed a grievance (*Id*. at pg. 4). Plaintiff then had surgery on one of his legs (*Id*. at pg. 14). After he returned, he was interviewed on the grievance. During that interview, Defendant Ryan allegedly told Plaintiff that if he pursued a grievance against the doctor, then he would never get treatment; this was not a threat, but a warning (*Id*. at pgs. 4, 14).

On July 14, 2005, Plaintiff had bypass surgery on his other leg (*Id*. at pgs. 4, 14). During this time, Plaintiff had developed an infection in his ear; it was affecting his recovery status (*Id.* at pgs. 4, 14). Plaintiff was given intravenous antibiotics and eardrops (*Id.* at pgs. 4, 14-15). On August 24, Plaintiff had an ear evaluation at Foote hospital, and a tube was inserted in Plaintiff's ear by the doctor (*Id.* at pgs. 5, 15). The doctor told him that the left ear was not operable. On September 27, Plaintiff refused to go to a doctor's appointment; he believes that the appointment was a follow-up exam regarding his leg surgery, and he says that his legs were just fine at the time. On the refusal slip, Plaintiff indicated that he wanted to have an appointment regarding his ears (*Id*. at pg. 15). In November, Plaintiff's ear was painful and

bleeding. He kited health care on November 16 and was put on Keflex for the infection (*Id.* at pgs. 4-5). Every attempt to obtain help from health care was responded to; he was prescribed more ear drops or antibiotics each time, but the medications did not help him (*Id.* at pg 5).

On May 10, 2006, Plaintiff's unit officer sent him to health care because he was disoriented and dizzy (*Id.* at pgs. 5, 17). Defendant Ives called in the doctor (*Id.* at pg. 5). The doctor told him that he needed surgery, but it was too late for the left ear. He was prescribed antibiotics and eardrops (*Id.* at pg. 18). The doctor allegedly also told him that CMS would never pay for a surgery, but it wouldn't matter because it was too late and surgery would not help (*Id.* at pgs. 5-6, 18). While the doctor was out, Plaintiff looked at his file and found a letter dated July 12, 2005, stating that he had hearing loss from an ear infection eight months prior (*Id.* at pgs. 6, 18).

On January 16, 2006, Plaintiff filed grievance JCF-2006-01-126-12d2; this is the only grievance that Plaintiff has ever pursued to Step III (Dkt. #24, Ex. A). Plaintiff attached this grievance to the Complaint. In it, Plaintiff complains of ear problems. None of the MDOC Defendants were named in this grievance. The response to this grievance indicated that there were no kites in Plaintiff's medical record asking to be seen for his ear problems, and was signed by Defendants Ryan and Ives (*Id.* at pgs. 5, 16). The Step II response was signed by Defendant Jones; Plaintiff alleges that Jones's response was a cover-up to protect the doctors. The Step III response indicated that Plaintiff had missed his follow-up appointment; Plaintiff claims that the appointment he missed was not for his ear (*Id.* at pg 16). The response was prepared by Defendant Martin and signed by Defendant Armstrong. Defendant Vasbinder was listed as being sent a copy of the response.

## II. ANALYSIS

(1.) <u>The Michigan Department of Corrections</u>

Plaintiff in his proposed amended complaint seeks to name MDOC instead of the individual MDOC Defendants in this ADA claim and his constitutional claim.[2] The plain language of the PLRA makes clear that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute does not apply solely to actions brought under 1983, but includes any action brought under Federal law which would include a claim based on the ADA. In *Porter v. Nussle*, 534 U.S. 516, (2002), the United States Supreme Court held that, unlike the previous exhaustion provision which encompassed only 1983 actions, the current PLRA's [exhaustion] requirement applies to all actions brought under 1983 or "any other Federal law" *Porter*, 534 U.S. at 524; see also *Burgess v. Garvin*, 2004 WL 527053, 2004 U.S. Dist. LEXIS 4122 (S.D.N.Y.2004)("Plaintiff raises no legal argument requiring departure from the Court's prior determination that the PLRA demands exhaustion of ADA claims")(internal citations omitted). Accordingly, Plaintiff is not relieved of his duty to exhaust his administrative remedies against MDOC as to the prison conditions which he asserts violate the ADA.

Here, Plaintiff did not name the MDOC in his grievance, and therefore has not exhausted

---

[2] While the ADA allows suit against public entities including MDOC and the State of Michigan, both MDOC and the State of Michigan, of which MDOC is a department, are immune from civil rights damages claims under the Eleventh Amendment. "The United States Supreme Court has dictated that, unlike counties and municipalities, state governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Constitution." *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997), cert. denied 522 U.S. 914 (1997).

his administrative remedies as to his proposed new defendant.  As noted in the Reports and Recommendations issued this date the only grievance that Plaintiff exhausted through Step III named only Dr. Antonini.  Therefore, any claim he might bring against the MDOC would be futile and should not be allowed because of failure to exhaust with regard to the ADA claims and Eleventh Amendment immunity with respect to his constitutional claims.  Accordingly, Plaintiff's motion to amend his Complaint to add the MDOC as a defendant is **DENIED**.

(2.) Dr. Antonini.

In Plaintiff's original Complaint, he sought to sue Defendant Antonini in both his individual and official capacity.  In Plaintiff's motion to amend he now moves to sue Defendant Antonini only in his individual capacity.  In a separate Report and Recommendation issued today, it is recommended that Dr. Antonini's motion to dismiss be granted on the merits.  Naming him in his individual capacity only will not remedy the failure of Plaintiff's complaint to state a deliberate indifference claim against Dr. Antonini.  Thus, it would be futile to allow this amendment for Plaintiff's § 1983 claim against Dr. Antonini.  Dr. Antonini also cannot be sued in his individual capacity under the ADA.  Because there are no federal claims remaining, this Court should not allow a supplemental jurisdiction claim against Dr. Antonini sounding in tort or other state claims.

Thus, Plaintiff's motion to file an amended complaint against Dr. Antonini in his individual capacity is **DENIED** as futile.

(3.) The MDOC Defendants.

Because Plaintiff's request to file an amended complaint against MDOC and Dr. Antonini are being denied, this moots the issue of dropping the MDOC defendants.

The parties to this action may object to and seek review of this Order, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and LR 72.1(d).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon the Magistrate Judge.

**SO ORDERED.**

Dated: January 31, 2008         s/ Steven D. Pepe
Ann Arbor, MI                   United States Magistrate Judge


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Order* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 31, 2008.

                                s/ Alissa Greer
                                Case Manager to Magistrate
                                Judge Steven D. Pepe
                                (734) 741-2298