**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT BASAT,

    Plaintiff,

Case No. 07-13332
Honorable Denise Page Hood

v.

PATRICIA CARUSO, DOUGLAS
VASBINDER, DR. AUDBERTO
ANTONINI, JOY J. RYAN,
CONNIE IVES, P. LEE, ALFRED
JONES, N. MARTIN,
J. ARMSTRONG, JOHN DOE,
MARY DOE,

    Defendants.

_____/

## ORDER ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

**I.  INTRODUCTION**

This matter is before the Court on Magistrate Judge Steven D. Pepe's Reports and Recommendations ("R&R") **[Dockets No. 35 and 36]**. The first R&R, filed on January 31, 2008 **[Docket No. 35]**, recommends granting Defendant Audberto Antonini's Motion to Dismiss **[Docket No. 20, filed October 11, 2007]**. Plaintiff filed objections to the first R&R. Defendant Antonini filed a responsive brief and Plaintiff filed a reply brief.

The second R&R, also dated January 31, 2008 **[Docket No. 36]**, recommends granting Defendants' Patricia Caruso, Douglas Vasbinder, Joy Ryan, Connie Ives, P. Lee, Alfred Jones, N. Martin, and J. Armstrong's ("MDOC Defendants") Motion to Dismiss **[Docket No. 24, filed November 6, 2007]**. It should be noted that the Plaintiff does not dispute his failure to exhaust as

to the MDOC Defendants and has moved to amend the Complaint **[Docket No. 29, filed December 3, 2007]**. In his proposed Amended Complaint, Plaintiff does not name MDOC Defendants **[Docket No. 30, filed December 3, 2007]**.

Plaintiff filed this *pro se* action on August 10, 2007. At the time of the events described in the Complaint, Plaintiff was incarcerated at the Michigan Department of Correction's ("MDOC") G. Robert Cotton Correctional Facility in Jackson, Michigan.[1] Plaintiff alleges that Defendants failed to treat his ear infection timely and properly. He brings his claim under the Eight Amendment, 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131.

## II.     STANDARDS OF REVIEW

### A.     Report and Recommendation

The standard for review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636. This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(B)(1). This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

### B.     Rule 12(b)(6) Dismissal

Dismissal is appropriate under the Federal Rules of Civil Procedure 12(b)(6) where a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate where a plaintiff cannot establish any set of facts that would entitle him to the relief sought. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). In a ruling on Rule 12(b)(6) motion, a court must

---

[1] Plaintiff is no longer housed at this facility.

construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas,* 537 F.3d 857, 858 (6th Cir. 1976).

    **C**.    *Pro Se* Standards of Review

When reviewing *pro se* complaints, the court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Circ. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, "the lenient treatment generally accorded to *pro se* litigants has limits," and *pro se* litigants are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

**III.**    **LAW AND ANALYSIS**

    **A.**  Dr. Antonini's Motion to Dismiss

        (1) *Claims Under the Eighth Amendment*

The first R&R recommends granting Defendant Antonini's Motion to Dismiss. Although the Magistrate Judge finds that the Plaintiff properly exhausted his remedies, the Magistrate Judge ultimately concludes that the Plaintiff's Eighth Amendment claim is partially barred by the applicable three-year statute of limitations, and otherwise fails to state a claim.

Plaintiff maintains in his Objection to the Magistrate Judge's Report and Recommendation that his Eighth Amendment claim is cognizable, principally relying on the time that had elapsed before he received antibiotic for his ears. Plaintiff further alleges that his Eighth Amendment rights were violated when Defendant Antonini stated "that Plaintiff must chose whether to save his legs or hearing." Complaint p. 13. Plaintiff also argues that the applicable three-year statute of

3

limitations did not begin to run until Defendant Antonini's wrongful conduct abated, or alternatively in early May 2005, when Plaintiff discovered reports that were fraudulently concealed to hide his injury.

The Court agrees with the Magistrate Judge that Plaintiff properly exhausted his administrative remedies with respect to grievance number JCF-06-01-126-12D2. Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." 42 U.S.C. § 1997(e)(a). The Supreme Court clarified that a prisoner must follow the state corrections systems's procedures and properly exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006). Although Defendant Antonini argues that the grievance was vague and untimely, the spirit of the PLRA, *Woodford*, MDOC Policy Directive 03.02.108, and *Jones v. Bock* would be violated if the MDOC would be permitted to review a grievance on the merits, only to later argue that the grievance was procedurally defective.

The Court adopts the R&R finding that Plaintiff failed to state an Eighth Amendment deliberate indifference claim. The main thrust of Plaintiff's objection is that the Defendant Antonini unduly delayed his access to the proper medical care. In particular, Plaintiff claims that Defendant Antonini's failure to provide antibiotics sooner, and the delay in allowing him to undergo surgery on his ear, were the direct cause of his suffering further injury. The Plaintiff also alleges that forcing him to choose the order of his surgeries, violates the Eighth Amendment prohibitions against cruel and unusual punishment.

Under the Eighth Amendment, an inmate may bring a §1983 claim regarding his conditions

of confinement only when he can show that there has been "deliberate indifference" to his "medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer,* 511 U.S. at 832 (The Amendment [] imposes duties on these officials [to] ensure that inmates receive adequate food, clothing shelter, and medical care...") (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984). The Supreme Court has established a two-part test, with both a subjective and objective prong, to determine whether a prisoner's right to adequate medical care has been violated. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the deprivation alleged must be "sufficiently serious' [in that] a[n] ... official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer*, 511 U.S. at 834. The second subjective prong requires plaintiff to show that police or jail physicians had a "sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). Specifically, to satisfy the subjective prong, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Comstock v. McCrary,* 273 F.3rd 693, 703 (6th Cir. 2001). Deliberate indifference may be evident when prison officials erect arbitrary and burdensome procedures that "result [] in interminable delays and out right denials of medical care to suffering inmates." *Mabry v. Antonini*, No. 07-2122, 2008 WL 3820478, at *5 (6th Cir. August 13, 2008) (citing *Todaro v. Ward*, 565 F.2d 48, 53 (2nd Cir. 1977)).

Here, the Magistrate Judge's R&R correctly noted that "The courts typically do not intervene in questions of medical judgment." *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). "Where a prisoner has received some medical attention and the dispute is over *adequacy of treatment* federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims

5

which sound in tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). The Plaintiff's objections sound in the care received rather than a lack of medical attention. Plaintiff again admits to receiving anti-vertigo medication, an ear-flush, and ultimately receiving antibiotic. The Court further reviewed the Complaint and found that Plaintiff has in fact received an adequate course of treatment on both ears.[2] Defendant may have acted negligently in failing to resolve Plaintiff's medical matter more quickly. However, accepting Plaintiff's allegations as true, Defendant's actions do not rise to the level of an Eighth Amendment violation.

The gravamen of the Plaintiff's objection is the delay in receiving treatment for his ear. More specifically, he alleges "over six months had elapsed between the complaints and the first time Plaintiff was given antibiotics." Because Plaintiff received medical care, the question before the Court is whether the delay experienced before receiving that care amounted to a violation of due process rights. *See Cain v. Irvin*, No.07-6080, 2008 U.S. App. Lexis 15347, at *14 (6th Cir. July 17, 2008). The Sixth Circuit has previously addressed when a delay in treatment may arise to a violation of the Eighth Amendment. *Blackmore v. Kalamazoo*, 390 F.3d 890, 897-98 (6th Cir. 2004) (citing the decisions of other circuit courts that "involve prisoner claims of delay in treatment that caused injury, loss, or handicap"). Other examples involve delayed administration of medication,

---

[2] On January 30, 2004 the Plaintiff first alerted staff of pain in ear and was taken to Duane Waters Hospital and received anti-vertigo medication. Complaint ¶¶ 20-22. On May 25, 2004 a nurse flushed Plaintiff's right ear with a peroxide solution, and after examination indicated that Plaintiff's left ear looked fine was probably just "wax buildup or an infection." *Id.* at ¶¶ 33-34. On September 10, 2004 a physician's assistant prescribed an antibiotic, Augmentin, for both of Plaintiff's ears. *Id.* at ¶ 44. On October 29, 2004 Dr. Antonini prescribed another antibiotic, Levaquin, for both of Plaintiff's ears. *Id.* at ¶ 49. In March of 2005, Plaintiff received a hearing test. *Id.* at ¶ 60. In an effort to avoid any delays in his leg surgery recovery, Plaintiff was prescribed another antibiotic for an ear infection on July 14, 2005. *Id.* at ¶¶ 66-68. On August 24, 2005, Dr. Ronald Kornack inserted a tube in Plaintiff's right ear. *Id.* at ¶ 70. In April or May of 2006, Plaintiff was prescribed antibiotic eardrops. *Id.* at ¶¶ 91-95.

*see, e.g.*, *Canady v. Wilkinson*, 90 Fed. Appx. 863, 2004 WL 232728 (6th Cir. 2004); *Dozier v. Pauley*, 24 Fed. Appx. 398, 2001 WL 1563602 (6th Cir. 2001); or claims based on a determination by medical personnel that medical treatment was unnecessary. *See, e.g., Smith v. Franklin County*, 227 F. Supp. 2d 667, 677-78 (E.D. Ky. 2002). The Sixth Circuit has addressed whether any delay in proving medical care was harmless, *Craw v. Gray*, 159 F. Supp. 2d 679 (N.D. Ohio 2001), or instances where the prisoner had a "very minor injury for which people outside prison would not even think of seeking outside medical treatment." *See, e.g.*, *Nickens v. Anderson*, 56 Fed. Appx. 244, 245, 2003 WL 344214 (6th Cir. 2003); *see also Wright v. Taylor*, 79 Fed. Appx. 829, 2003 WL 22474614 (6th Cir. 2003) (decaying tooth); *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863 (E.D. Mich. 2003) (foot infection from which plaintiff suffered "minor discomfort").

The Sixth Circuit has held that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore*, 390 F.3d at 898. The verifying medical evidence requirement applies where the plaintiff's "deliberate indifference claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. *Id.* In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury. Plaintiff proposes to offer a statement from Dr. Ronald Kornack as verifying medical evidence. Dr. Kornack's statement fails to indicate that a delay in treatment caused Plaintiff's injury instead it is only a diagnosis of his current state.[3]

---

[3]Complaint, item 2, p.15, states in relevant part:
> This patient had an ear infection eight months ago, and he had severe loss in the left ear. Since that time, his audiogram reveals conductive loss in both ears but predominantly neurosensory loss in the left ear. He has flat tympanograms bilaterally with marginal excess volume. This could indicate a perforation in the

7

Plaintiff's failure to present verifying medical evidence precludes him from bringing a deliberate indifference claim for improper follow-up treatment, even if, as Plaintiff alleges, Defendant knew of the seriousness of Plaintiff's initial injury. *See Napier v. Madison County*, 238 F. 3d 739, 742 (6th Cir. 2001); *see e.g. Moore v. Michigan*, No. 07-cv-561, 2008 U.S. Dist. Lexis 20754 at *3-4 (W.D. Mich. Mar. 17, 2008); *Davis v. Wilkinson*, No. 2:04-CV-303, at*20-28, 2006 U.S. Dist. Lexis 150221 (S.D. Ohio Mar. 31, 2006) Plaintiff has submitted evidence regarding the diagnosis of his injury, but he has submitted no verifying medical evidence to establish the detrimental effect of the allegedly delayed follow-up treatment.

Even if Dr. Kormack's statement was sufficient to satisfy the verifying medical evidence requirement of the objective prong, Plaintiff still fails to satisfy the subjective prong of the deliberate indifference analysis. In order to satisfy the subjective requirement, Plaintiff must show "a sufficiently culpable state of mind in delaying medical care." *Harrison v. Ash*, ---- F.3d.----, 2008 WL 3926790, at *4 (6th Cir. 2008). This subjective requirement is met where a plaintiff demonstrates that the prison officials acted with "deliberate indifference" to a serious medical need. *Id.* An official is deliberately indifferent where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* However, in cases where prison officials "actually knew of a substantial risk to inmate health or safety, they may be found free from liability if they reasonably respond to the risk, even if the harm

---

left ear. He has no infection at the present time with no pus in the ear. He has a retractive right tympanic membrane. He needs a right tympanotomy and tube done and the left ear checked with possible tube, under general anesthesia as no outpatient at Foote Hospital.

8

ultimately was not averted." *Id.* at *5. The Plaintiff submits that on his first encounter with Defendant Antonini, that he was given an antibiotic for his ear infection. Complaint ¶ 44. As Defendant Antonini reasonably responded to the medical risk to Plaintiff's health, he was not deliberately indifferent to Plaintiff's medical needs. Moreover, Plaintiff has presented no allegations of fact from which to infer that Defendant Antonini possessed the requisite state of mind necessary for a finding of deliberate indifference.

Plaintiff also alleges that being forced to choose the order of his required surgeries amounts to cruel and unusual punishment in violation of the Eighth Amendment. The Court disagrees, "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring control over a tumultuous cellblock." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). Forcing the Plaintiff to choose the order of his required surgeries does not in itself amount to cruel and unusual punishment. The Court notes that Defendant Antonini's alleged comments[4] do not reflect the bedside manner or compassion that we expect of physicians, however these alone do not arise to the level of cruel and unusual punishment. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the

---

[4] The Plaintiff's alleges that during a medical consultation Dr. Antonini stated "...if it were me, I would opt for the bypass, what would you rather lose, your legs or your hearing?...the State would not waste money on people like you, inmates in prison are not deserving of health care like the people on the outside."

meaning of the Eight Amendment.").

Plaintiff also objects to the R&R's recommendation that the claim is partially barred by the applicable statute of limitations. The Court agrees that the Plaintiff's claim would not be barred by the applicable statute of limitations. The statute of limitations is tolled during the time period a prisoner is seeking and exhausting available remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)(citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999)(per curium); *Cooper v. Nielsen*, 194 F.3d 1316 (9th Cir. 1999). Plaintiff's Step III grievance response was signed on March 3, 2006. Complaint, item 2, p.4. Plaintiff filed his Complaint on August 10, 2007, less than three years after receiving MDOC's response to the Step III grievance. While the Court agrees that the Plaintiff filed in a timely manner, Plaintiff still fails to meet the threshold requirements to state a deliberate indifference claim.

(2) *Claims under the Americans with Disabilities Act ("ADA")*

The Magistrate Judge's R&R recommends granting Defendant Antonini's motion by finding that the Plaintiff has not stated a claim under the ADA. The Plaintiff asserts in his objection that Defendant is liable under the ADA in his "official capacity," pursuant to *Williams v. McLemore*, 247 Fed. Appx. 1, 8 (6th Cir. 2007). However, the issue in *Williams* was whether public employees could be sued in their individual capacities. In the instant case, the Defendant, Dr. Antonini, is not a public employee. He is an independent contractor of Correctional Medical Services, Inc., which is an independent contractor of the Michigan Department of Corrections. It is well-established that public employees may not be sued in their individual capacities under the ADA. *Id. See e.g. Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808, n.1 (6th Cir. 1999) (holding that the ADA does not permit public employees or supervisors to be sued in their individual capacity). Plaintiff's

claims against Defendant in his individual capacity fail as a matter of law.

It is undisputed that state prisons fall within the statutory definition of "public entity" and maybe liable under the ADA for denying prisoners benefits of their programs, services, or activities. *Pennyslvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998). Here, unless the Defendant is an agent of the Jail, a claim against him in his official capacity cannot succeed under the ADA. Defendant Antonini does not satisfy the agency requirement because he attests that he contracts with the jail to provide medical services, but is not an employee of the jail. The ADA applies only to state entities and not to independent contractors who act under the color of state law. *See Cuco v. Fed Med. Center-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668 (E.D. Ky. 2006), *aff'd Cuco v. Fed Med. Ctr., Lexington,* 257 Fed. Appx. 897 (6th Cir. 2007); *See e.g.*, *Moore v. Tanner*, No. 07-CV-10442, 2008 WL 3876346 (E.D. Mich). As an independent contractor, a claim against Dr. Antonini in any "official" capacity fails. *See, Cuco*, 257 Fed. Appx. 897; *Vandermolen v. City of Roosevelt Park*, No. 1:97-CV-200, 1997 U.S. Dist. Lexis 19335 (W.D. Mich.).

**B.**     MDOC Defendants' Motion to Dismiss

The second R&R **[Docket No. 36, filed Jan. 31, 2008]** recommends that the MDOC Defendants' Motion to Dismiss be granted. The Magistrate Judge finds that Plaintiff has not exhausted all administrative remedies against MDOC Defendants because a prisoner must name all defendants in his grievance before being considered to have exhausted all of his claims. Plaintiff has not filed objections to the Magistrate Judge's second R&R and the time to do so has expired. The Court again notes that Plaintiff moved to amend his complaint in order to remove the MDOC Defendants.**[Docket No. 30, filed Dec. 3, 2007].**

**IV.**     **CONCLUSIONS**

The Court has had an opportunity to fully review this matter. The Court finds that Magistrate Judge Pepe correctly and thoroughly analyzed the issues presented and reached the proper conclusions for the proper reasons. The Court will accept and adopt the Magistrate Judge's R&R as the findings of fact and conclusions of the Court.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Steven D. Pepe's Report and Recommendation **[Docket No. 35, filed Jan. 31, 2008]** is **ACCEPTED** and **ADOPTED**, in addition to the reasons set forth above. Plaintiff's claims against Defendant Antonini are **DISMISSED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Steven D. Pepe's Report and Recommendation **[Docket No. 36, filed Jan. 31, 2008]** is **ACCEPTED** and **ADOPTED** as this Court's findings and conclusions of law. Plaintiff's claims against Defendants Caruso, Vasbinder, Ryan, Ives, Lee, Jones, Martin, and Armstrong are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss **[Docket No. 20, filed Oct. 11, 2007]** is **GRANTED**.

**IT IS FURTHER ORDERED** that MDOC Defendants N. Martin, J. Armstrong, Patricia Caruso, Douglas Vasbinder, Joy Ryan, Connie Ives, P. Lee, and Alfred Jones Motion to Dismiss **[Docket No. 24, filed Nov. 6, 2007]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED** for failure to state a claim on which relief can be granted.

S/Denise Page Hood<br>Denise Page Hood<br>United States District Judge

Dated: September 30, 2008

I hereby certify that a copy of the foregoing document was served upon Robert Basat, Reg. No. 472479, Gus Harrison Correctional Facility, 2727 E. Beecher St., Adrian, MI 49221 and counsel of record on September 30, 2008, by electronic and/or ordinary mail.

S/William F. Lewis<br>Case Manager